No. 12,953.

JOHN M. CUNNINGHAM vs. JULES C. DENIS.

SYLLABUS.

1. Two partners, in disagreement over the affairs of a partnership, appointed a third person as arbitrator, custodian, receiver and depositary, with authority to dispose of the partnership assets, pay debts of the partnership, and also individual debts of the partners, and settle with them for balance left over.

2. This third person, acting within the scope of the mandate thus accepted by him, will be protected against the suit of one of the partners seeking to hold him responsible on the theory of a change, by subsequent agreement of the partners, as to disposition of part of the assets. Such subsequent agreement, to control, must appear with as much certainty and definiteness as did the first conferring the mandate.

A PPEAL from the Civil District Court for the Parish of Orleans.
—*Monroe, J.*

*W. S. Benedict* and *F. Rivers Richardson* for Plaintiff, Appellant.

*Buck, Walshe & Buck* for Defendant, Appellee.

Argued and submitted March 8, 1899.
Opinion handed down April 3, 1899.

The opinion of the court was delivered by
BLANCHARD, J. Plaintiff and James L. O'Connor were partners in a contract with the City of New Orleans for constructing certain iron bridges, etc.

The contract had been taken in the name of O'Connor. Payment for the bridges was made by the city in certificates of indebtedness, or warrants drawn against a certain fund, which it seems was yet to be collected. Four such certificates were issued, all in the individual name of O'Connor, aggregating the full value of $28,983.

Disagreement arose between the partners, with the result that Cunningham (plaintiff herein) filed a bill in equity in the Federal Court against O'Connor, the object of which was the settlement and liquidation of the partnership affairs. The appointment of a receiver was asked, an injunction *pendente lite* prayed for, and pending its consideration by the court, a restraining order was issued prohibiting O'Connor from collecting or disposing of any of the partnership assets, and particularly the certificates or warrants issued or due from the City of New Orleans.

This litigation in the Federal Court appears to have gone no further. It was ended by agreement of the parties thereto to submit all of their differences to J. C. Denis (now defendant herein) and to abide by his decision in reference to same; and it was further consented that he should act as receiver of the partnership, or rather as custodian and depositary of its effects and funds, with authority to collect and dispose of its assets and pay its liabilities.

It appears that the only assets which passed into the hands of the custodian so selected were the four certificates, hereinbefore referred to, issued by the city.

The selection of defendant as arbitrator and custodian was made December 3, 1896.

On the same day the two partners signed a further agreement to the effect that the custodian was to pay the indebtedness of J. L. O'Connor (one of the partners) to the Germania Bank, and the bills of certain other creditors who were mentioned—all bills to be approved prior to payment by both partners, and to be paid out of the proceeds of the certificates issued by the city.

Following this, the partners appear to have agreed upon the figures of a settlement between themselves, and on January 22, 1897, placed in the hands of defendant (arbitrator and receiver aforesaid) a paper evidencing such agreement as follows:

"James L. O'Connor

"To John M. Cunningham, Dr.

"To balance due on one-half interest in the profits on contracts taken by J. L. O'Connor and J. M. Cunningham under their agreement—payable out of the proceeds of sale of certificates issued by the city of New Orleans in favor of J. L. O'Connor, and now held by the Germania Bank—forty-nine hundred and eighty-four dollars ($4984).

"Approved—subject to one-half of discount on sale of the certificates mentioned.

(Signed)                                                    J. L. O'Connor."

"Accepted in settlement of balance due me with the right to benefit of one-half of reduction, if any, on bills now pending settlement.

(Signed)                                                  J. M. Cunningham."

This agreement contemplated two things:

1. That the city certificates should be sold by the receiver.

2. That Cunningham (plaintiff) was to be paid what was stipulated to be due him out of the proceeds of the sale.

But, necessarily, payment to him was to be postponed or subordinated to payment of those claims against the fund which the two partners approved or might thereafter approve for payment.

Following this, the two partners repeatedly urged upon the receiver to effect a sale of the certificates, to the end of settling the debts and winding up the affairs of the partnership, and he exerted himself to dispose of them to the best advantage.

Finally, through a firm of brokers, he effected a sale of the same at 90 cents on the dollar and realized $26,084.70 in cash for the lot, out of

which he paid brokerage commissions of 1%, leaving net $25,794.87. This was on May 4, 1897.

He promptly notified both partners of the sale so effected, and the next day J. L. O'Connor replied by letter approving the sale.

It seems, however, that following the agreement of January 22nd, heretofore recited, some negotiations were had between the two partners looking to a different settlement of the $4,984 agreed on as Cunningham's share of the profits of the contract with the city. It appears that Cunningham proposed to take at par one of the certificates issued by the city for the amount due him, paying to the receiver the difference between the face value of such certificate and the amount due him in cash. The plaintiff contends that the certificate, with reference to which this offer was made by him, was the second one, in point of date, of the four in the receiver's hands, and called for $5800. O'Connor testifies that he expressed himself as willing Cunningham should take a certificate at par under his proposition—he paying the difference in cash; that Cunningham asked for the first certificate— *i. e.* the one first in point of date (because it would be paid first by the city), but that he refused his assent to this, and only agreed that he should take a certificate (meaning one of the four) not specifying which one.

Plaintiff and his attorneys, it seems, had some conversation with Jos. Brewer, attorney for O'Connor, and with Chas. F. Buck, attorney for defendant, and the claim is set up that the latter agreed to the settlement upon the basis of the surrender of the $5800 certificate to plaintiff in full of his claim, he paying the difference in cash. Mr. Buck denies he agreed on behalf of defendant to such settlement, that he had no authority to arrange such a settlement, and that as far as he went was to say that he could see no objection to it, if defendant consented. He says he was at that time, with Jos. Brewer, the attorney of O'Connor, and was also the attorney of the Germania Bank, whose president, J. C. Denis, was the receiver or custodian of the partnership of O'Connor and Cunningham, and while in these capacities he talked over the proposition of settlement with Cunningham and his attorneys, he never assumed to have the authority of either O'Connor or defendant to bind them by an acceptance of the proposition made by the plaintiff.

The matter culminated in the following letter, to-wit:

"New Orleans, La., 28th April, 1897.

"Jos. Brewer, Esq.,

"Attorney-at-Law,

"City.

"Dear Sir:—After seeing Mr. Denis about the Cunningham-O'Con-- nor matter, I had some interview with Mr. Benedict and Mr. Richardson, and Mr. Benedict now proposes that Mr. Cunningham be given.. the second certificate, which is dated October 12th, 1896, and is for $5800, offering to make up in cash the difference between this certificate and the amount of Cunningham's claim. As there is a prior certificate for $5750, this proposition seems fair and reasonable to me,. but I would prefer not to submit it to Col. Denis without first consulting with you about it.

"I understand that Mr. O'Connor will agree to whatever we and. Col. Denis may decide to do.

"Yours truly,

(Signed)                                                    CHAS. F. BUCK."

"April 30th, Col. J. C. Denis, respectfully referred.

J. L. O'CONNOR."

This letter supports the contention of Mr. Buck, that he had not definitely asesnted to any settlement proposed by plaintiff, and that the matter would rest finally with defendant and O'Connor.

Instead of O'Connor and Brewer, his counsel, replying to the letter signifying their assent, the former merely indorsed the letter over to defendant as "respectfully referred" to him, and thereafter neither defendant, nor Buck, his counsel, ever agreed to the proposition of settlement which plaintiff had made. Indeed, it would seem, that de-- fendant, far from agreeing, within a few days thereafter sold all the certificates, including the one for $5800, which sale O'Connor, the next day, approved, as we have seen.

Shortly after this the present suit was brought, the object of which is to compel defendant to deliver to plaintiff the certificate for $5800, and, in default of his so doing, to recover the amount of the same from him in money, less the difference between its face value and the sum of $4984 admitted to be due plaintiff in his settlement with his partner, O'Connor.

The allegation is made of the offer of plaintiff to take the $5800 certificate at its face value, paying the difference as aforesaid, which offer the petition goes on to allege "was referred to Jos. Brewer and"

also Chas. F. Buck, of counsel for J. L. O'Connor and by them approved, and by said J. L. O'Connor referred to said J. C. Denis for settlement."

And further that "said J. C. Denis refuses and declines to honor said order and turn over said certificate to petitioner, etc."

Defendant's answer recites his authority from the two partners to sell the certificates, and to settle the indebtedness of the firm and certain charges against its members individually, and then account for the balance to them; that he did sell the certificates, and pay the debts as agreed on; and that, thereupon, he rendered to the parties a full statement of what had been done, which showed that after there had been deducted from the $4984 due plaintiff, as agreed upon between himself and his partner, certain sums which he had authorized to be paid and a further sum equal to his share of the discount loss on the sale of the certificates, there was left to plaintiff a balance of $2519.10, which amount respondent tendered and deposited in court, together with $9.75 court costs up to that point of the litigation. He expressly denied that any agreement was made by J. L. O'Connor to deliver to plaintiff the $5800 certificate, as alleged in the petition, and avers that no such understanding or arrangement was ever acquiesced in or assented to by him (defendant).

On the issues as thus presented judgment below was in favor of defendant. Plaintiff was awarded the amount admitted to be due by defendant and which had been deposited in court. He appeals.

We think the case was decided correctly.

There can be no doubt that the partners not only authorized defendant to sell the certificates and pay the debts, but went further and vested him with authority to settle the differences between the partners which had arisen or might arise, and bound themselves to abide by his decision. And the agreement of January 22, 1897, which fixed the amount to which plaintiff was entitled in the settlement of the partners between themselves, directed the payment of this amount out of the *proceeds of the sale of the certificates.*

Not only that, but it is distinct authority to defendant to charge plaintiff with half of the discount on the sale of the certificates.

So that defendant had authority:

1. To sell the certificates and did sell them.

2. To pay the debts of the partnership and of the partners, and did pay them.

Cunningham vs. Denis.

3. To charge plaintiff with half the discount loss, and did so charge him.

And under the general power vested in him to act as arbitrator, receiver, custodian and depositary, and considering the obligations he assumed in connection with his acceptance of this trust, we do not think the subsequent agreement or arrangement, if any, between the partners, making or attempting to make another disposition of one of the certificates placed in his hands as part of the assets out of which to pay debts, was binding or enforceable unless assented to by defendant.

But we do not find that any such "subsequent agreement," as contended for by plaintiff, by which he was to have and take the $5,800 certificate, paying the difference as aforesaid, was consummated. The most that can be claimed for it is that negotiations to that end were opened, conducted and progressed to the point of reaching the *basis* of consent; but the final act of consent and agreement either by O'Connor or by defendant was not consummated.

The attorneys representing O'Connor and defendant were not empowered to consummate the same, if they had undertaken to do so, and we do not think it is shown they undertook to do so.

The proof fails in point of showing that O'Connor agreed plaintiff should have and take the $5800 certificate. On the contrary, instead of indorsing his consent to this arrangement on the letter of April 28th, from Buck to Brewer, which mentioned the $5800 certificate as the one plaintiff proposed to take, he merely turned it over to defendant with the written endorsement: "April 30, Col. J. C. Denis, respectfully referred," as though it were his intention to leave to defendant whether the proposition of plaintiff should be accepted or declined, and this view is sustained by the fact that when, within a few days, defendant, instead of turning over one of the certificates to plaintiff, sold them all, his act in selling received the prompt approval of O'Connor.

There being, then, no subsequent agreement and consent of the partners, we find that defendant has in no wise departed from the terms of the mandate under which he accepted the trust of receiver, arbitrator, custodian and depositary, and, hence, no cause of action against him, as asserted by plaintiff, has arisen.

We do not think this is a case where the principle of law invoked by plaintiff, that a custodian or receiver, as between two partners, can

FIFTY-FIRST ANNUAL REPORTS, 1899. 909·

State ex rel. Seaton vs. N. O. & Carrollton R. R. Co.

not disregard their orders in the interest of a third person also represented by the receiver in another capacity, applies.

Judgment affirmed.

MR. JUSTICE MONROE having decided the case in the lower court, takes no part in the case here.